IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ERICA CARDENAS,**<br><br>*Plaintiff*,<br><br>*v.*<br><br>**RFG USA INC., D/B/A ROYAL FUNDING GROUP**,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Erica Cardenas ("Plaintiff Cardenas" or "Cardenas") brings this Class Action Complaint and Demand for Jury Trial against Defendant RFG USA Inc. d/b/a Royal Funding Group ("Defendant" or "Royal Funding Group") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited text messages and calls to phone numbers that are registered on the National Do Not Call registry ("DNC"), including calls and texts that were placed after the Defendant was told to stop calling/texting. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Cardenas, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Cardenas is a resident of Chula Vista, California.

2. Defendant Royal Funding Group is a New York registered corporation located in New York, NY. Defendant Royal Funding Group conducts business throughout this District and throughout the United States including in California.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here.

**INTRODUCTION**

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 5.0 billion robocalls were placed in April 2025 alone, at a rate of 165.0 million per day. www.robocallindex.com (last visited May 4, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Royal Funding Group provides business funding solutions throughout the US.[3]

15. Defendant Royal Funding Group places calls and sends text messages to solicit its business funding solutions.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/royal-funding-group/about/

16. Defendant Royal Funding Group places telemarketing calls and text messages to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

17. On Glassdoor, a job review website, an applicant for a job at Royal Funding Group posted about the requirement to place 300 calls, daily:

**Sales Representative Interview** Sep 13, 2022

**Anonymous Interview Candidate**

New York, NY

**Declined offer** **Negative experience** **Difficult interview**

**Application**
I applied online. The process took 1 day.I interviewed at Royal Funding Group (New York, NY) in Aug 2022

**Interview**
Frankly, the CEO was very rude. a lot of discrimination. fake promises. I don't recommend it. unprofessional, the original CEO was excellent but unfortunately, he left, because he couldn't keep up with lies.

**Interview questions [1]**
Question 1
asking to make 300 calls a day. [4]

18. Unfortunately, Royal Funding Group does not use or maintain an internal do not call list, resulting in consumers receiving additional unwanted calls and text messages despite telling the Defendant to stop contacting them, as per Plaintiff's experience.

19. Consumers and businesses have posted complaints online about unsolicited calls and text messages that they received from Royal Funding Group, including:

- "They are continuing to harras me, even though ***I don't own any business and my phone number is in Do Not Call Registry***.
  They don't care about you, they possibly may sell your information to other companies and you will be in their spam base forever…"[5] (emphasis added)

[4] https://www.glassdoor.com/Interview/Royal-Funding-Group-Interview-Questions-E4565613.htm
[5] https://www.google.com/search?q=royal+funding+group

- "I was contacted by a representative of this company who was extremely rude. The individual cut me off while I was trying to ask who was calling. I asked, 'who is this' they responded with 'RFG' I asked 'Please tell me your companies full name' he responded impatiently and nasty 'It's just RFG are you looking for a loan.' … I asked for the companies full info again he finally responded 'Royal Funding Group' I responded that I was not interested in any funding. He got very nasty with me and began berating me 'why are you asking me about my companies info if you're not interested in a loan'

  Edit: **this company continues to contact me after I specifically requested to be put on a do not call list.**"[6] (emphasis added)

20. In response to these calls and text messages, Plaintiff Cardenas brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF CARDENAS' ALLEGATIONS**

21. Plaintiff Cardenas is the sole owner and exclusive user of her cell phone number ending in 5615.

22. Plaintiff Cardenas has owned her cell phone number for over 10 years.

23. Plaintiff Cardenas registered her cell phone number on the DNC on November 9, 2023.

24. Plaintiff Cardenas uses her cell phone number for personal use only as one would use a landline telephone number in a home.

25. Plaintiff Cardenas uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

26. Plaintiff Cardenas does not have a landline in her home.

27. Plaintiff Cardenas' cell phone number is registered under her husband's name through Verizon and not registered under any business name.

---

[6] Id.

28. Plaintiff Cardenas' Verizon plan is registered to her home address, not the address of a business.

29. Plaintiff Cardenas pays for her cell phone plan. It is not reimbursed by a business.

30. Plaintiff Cardenas pays for a Go Unlimited Verizon plan for her cell phone number.

31. Go Unlimited is a plan for individuals or families that offers unlimited data, calling and texting.[7]

32. Plaintiff Cardenas has never had her cell phone number associated with a business.

33. This phone number is not used in any business or marketing materials.

34. Plaintiff Cardenas has never listed her cell phone number publicly as a business contact number.

35. On February 17, 2025, Plaintiff Cardenas received an unsolicited text message to her cell phone from 334-689-6931.

36. The text message did not state a company name, so Plaintiff texted 334-689-6931 asking for the company name and a loan application, to confirm who sent the text message.

37. Plaintiff asked for the company name and loan application because she had received multiple calls and text messages from other business loan companies prior to receiving the aforementioned text.

38. Plaintiff Cardenas received a response back from 334-689-6931 right away confirming that the text message was sent by Sarah from Royal Funding Group:

---

[7] https://www.wirefly.com/wireless-plan/verizon-go-unlimited




39. On February 18, 2025 at 8:26 AM, Plaintiff Cardenas received another text message to her cell phone, this time from 954-738-3260.

40. Plaintiff texted 954-738-3260 back asking to confirm the company name and asking for a loan application.

41. A response was sent almost immediately from Kate at Royal Group who addressed Plaintiff Cardenas as Eric:




42. On February 18, 2025 at 1:08 PM, Plaintiff Cardenas received a call to her cell phone from 347-727-0555.

43. When Plaintiff answered this call, an employee introduced herself as Kate calling from Royal Funding and said she was calling about business funding.

44. Plaintiff Cardenas told Kate that she was calling the wrong number and ended the call.

45. Despite the clear stop request, Plaintiff received an unsolicited text message to her cell phone from Kate at 1:13 PM on February 18:




46. On February 19, 2025 at 7:39 AM, Plaintiff Cardenas received another unsolicited text message to her cell phone from Kate:




47. Plaintiff Cardenas received another unsolicited call to her cell phone on February 20, 2025 at 1:08 PM from 347-727-0555.

48. When Plaintiff Cardenas answered this call, an employee said they were calling from Royal Funding Group.

49. Plaintiff Cardenas immediately told the employee that they were calling the wrong number and ended the call.

50. On March 4, 2025 at 1:49 PM, Plaintiff Cardenas received an unsolicited text message to her cell phone from 334-689-6931 containing a link to a loan application:




51. As of May 5, 2025, https://rfg.jotform.com/ray/funding-application-form-SF-1818 displays the following:


Funding Application Form - Sarah Faith (1818)

RFG
ROYAL FUNDING GROUP

Royal Funding Group
180 Maiden Lane, New York, NY 10038
1909 Tyler Street, Hollywood FL 33020
P: (929) 506-8133 F: (929) 506-8133
Email: Info@RoyalFundingGroup.com
Web: www.RoyalFundingGroup.com

**Business Information**

Business Legal Name:

52. On March 10, 2025 at 12:50 PM, Plaintiff Cardenas received an unsolicited call to her cell phone from 347-503-7224.

53. When Plaintiff answered this call, an employee said they were calling from Royal Funding Group.

54. Plaintiff told the employee that they were calling the wrong number and that her number is on the DNC. She then ended the call.

55. Despite the stop request, Plaintiff Cardenas received a call back from 347-503-7224 twice at 12:51 PM. These calls were not answered.

56. On March 10, 2025 at 12:59 PM, Plaintiff Cardenas received an unsolicited text message to her cell phone from 334-689-6931:




57. On March 18, 2025 at 1:56 PM, Plaintiff Cardenas received an unsolicited text message to her cell phone from 334-689-6931:




58. On March 22, 2025 at 11:51 AM, Plaintiff Cardenas received another unsolicited text message to her cell phone from 334-689-6931:




59. On June 30, 2025 at 1:16 PM, Plaintiff Cardenas received another unsolicited text to her cell phone, this time from 334-689-6931.

60. The text message did not state a company name, so Plaintiff texted back asking which business texted her.

61. In response, Plaintiff was told that the company name is Royal Funding Group:



62. Plaintiff Cardenas has never done business with Royal Funding Group or consented to be contacted by them.

63. The unauthorized solicitation calls and text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Cardenas in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

64. Seeking redress for these injuries, Plaintiff Cardenas, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

65. Plaintiff Cardenas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Royal Funding Group called and/or texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called/texted Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Royal Funding Group called and/or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling/texting.

66. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6)

persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Cardenas anticipates the need to amend the Class definitions following appropriate discovery.

67. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

68. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant Royal Funding Group placed multiple calls and/or text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call and/or text message;

(b) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c) whether the calls and text messages constitute a violation of the TCPA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

69. **Adequate Representation**: Plaintiff Cardenas will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Cardenas has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Cardenas and her counsel are committed

to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Cardenas nor her counsel have any interest adverse to the Classes.

70. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Cardenas. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Do Not Call Registry Class)**

71. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

72. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

73. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

74. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Cardenas and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Cardenas and the Do Not Call Registry Class received more than one call and/or text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

76. As a result of Defendant's conduct as alleged herein, Plaintiff Cardenas and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

77. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Internal Do Not Call Class)**

78. Plaintiff repeats and realleges paragraphs 1-70 of this Complaint and incorporates them by reference herein.

79. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf

> the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

80. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

81. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

82. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling and texting activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Cardenas requests a jury trial.

**ERICA CARDENAS**, individually and on behalf of all others similarly situated,

DATED this 24th day of July, 2025.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman (pro hac vice forthcoming)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*